## UNITED STATES v. SOUTHERN PAC. CO.

(District Court, N. D. California. December 4, 1907.)

1. CARRIERS—INTERSTATE COMMERCE—STATUTE REGULATING CARRIAGE OF LIVE STOCK.

An "accidental or unavoidable cause which cannot be anticipated or avoided by the exercise of due diligence and foresight," and which will legally excuse an interstate carrier of live stock for confining such stock in cars for a period longer than 28 consecutive hours without unloading for rest, water, and feeding, under Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918], is one which cannot be avoided by that degree of prudence, foresight, care, and caution which the law requires of every one under the circumstances of the particular case, and as would have been exercised by a man of ordinary prudence under such circumstances. An accident occurring to a train through the negligence of the transportation company is not such a cause; nor is mere press of business, or the sidetracking of the train to allow for the passing of other trains, the meeting or passing of which could have been anticipated when the transportation was begun, or the lack of facilities for unloading or feeding.

2. SAME—KNOWING AND WILLFUL VIOLATION OF STATUTE.

A railroad company is subject to the penalty imposed by Act June 29, 1906, c. 3594, § 3, 34 Stat. 608 [U. S. Comp. St. Supp. 1907, p. 919], for knowingly and willfully failing to comply with its provisions as to the unloading of live stock for rest, water, and feeding, where its servants or employés in charge of its train knowingly keep such stock confined in

cars for more than 28 consecutive hours without any lawful excuse, as prescribed by the act.

**3. SAME—CONNECTING CARRIERS.**

Under Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918], prohibiting interstate carriers of live stock from keeping the same confined for a period longer than 28 consecutive hours without unloading for rest, water, and feeding, a railroad company which delivers the cars containing such stock to a connecting carrier or to the consignee within the prescribed time is relieved from further responsibility.

**4. SAME—ACTION TO RECOVER PENALTY—BURDEN AND MEASURE OF PROOF.**

In an action by the United States against a railroad company to recover the penalty imposed by Act June 29, 1906, c. 3594, § 3, 34 Stat. 608 [U. S. Comp. St. Supp. 1907, p. 919], for knowingly and willfully failing to comply with its provisions requiring the unloading of live stock for rest, water, and feeding, the government is required to establish its case only by a preponderance of the evidence.

**5. SAME—SEPARATE OFFENSES.**

In case of the violation by a railroad company of Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918], by keeping live stock confined in cars longer than the time therein prescribed without unloading for rest, water, and feeding, each independent shipment or consignment of stock constitutes the basis for a separate charge, and each separate confinement of the same stock for longer than the prescribed time, although during the same continuous transportation, also constitutes a separate offense.

On Prosecution for Violation of "Twenty-Eight Hour Law."

A. P. Black, Asst. U. S. Atty.
Charles J. Heggerty, for defendant.

DE HAVEN, District Judge (charging jury). As you already know, several actions on which you are to find verdicts are being prosecuted by the United States against the Southern Pacific Company, charging it with a violation of Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [U. S. Comp. St. Supp. 1907, p. 918]. That statute, so far as it is necessary for your information, provides that no railroad company carrying stock, such as "cattle, sheep, and swine" between two states—

"shall confine the same in cars of any description for a period longer than 28 consecutive hours without unloading the same in a humane manner into properly equipped pens for rest, water, and feeding, for a period of at least 5 consecutive hours, unless prevented by storm or other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight: Provided, that upon the written request of the owner or person in the custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, or other railroad form, the time of confinement may be extended to 36 hours. In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest, or food, or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of 28 hours, except upon the contingencies hereinbefore stated: Provided, that it shall not be required that sheep be unloaded in the nighttime, but where the time expires in the nighttime in case of sheep the same may continue in transit to a suitable place for unloading, subject to the aforesaid limitation of 36 hours."

The next section provides for the feeding of animals. Paragraph 3 provides:

"That any railroad, express company, car company, common carrier other than by water, or the receiver, trustee, or lessee of any of them, or the master or owner of any steam, sailing, or other vessel who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every failure be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars."

You are charged that under this act, in estimating the time of confinement of these animals in the cars of the defendant, you must not consider the time consumed in loading or unloading; in other words, the time consumed in loading these animals upon its cars, and unloading them out of its cars, shall not be included as a part of the time during which the defendant has the right to confine the animals in its cars. The object and purpose of the act of June 29, 1906, is to insure the humane treatment of animals in interstate transportation of animals upon cars. The words "in the nighttime," speaking about sheep—they are not required to unload sheep in the nighttime—means that period of time between the termination of daylight on the evening of one day and the earliest dawn of the next morning.

You are charged that if you find from the evidence that the defendant was prevented by storm, or by other accidental or unavoidable causes which could not have been anticipated or avoided by the exercise of due diligence and foresight, from unloading for rest, water, and feeding the animals carried by it in its cars in any one or more of these cases, then that the defendant has not violated the provisions of the act, in any such one or more cases in which you may so find, and in such case or cases your verdict should be for the defendant. You are further charged that you cannot find a verdict against the defendant in any of these cases of a violation of the provisions of the act of June 29, 1906, unless you find from the evidence that the defendant did knowingly and willfully fail to comply with the provisions of this act.

An unavoidable accident or occurrence is one which cannot be avoided by that degree of prudence, foresight, care, and caution which the law requires of every one under the circumstances of the particular case; that is, such care and caution as would have been exercised by a man of ordinary prudence under the circumstances of the particular case. A corporation can only act through its agents and its servants, and must, therefore, be held to have knowledge of whatever is known to its agents engaged in the operation and running of its trains. A railroad may be said to knowingly and willfully fail to comply with the statute to which your attention has been called when those in charge of the train upon which any shipment of stock is being carried intentionally confine them for a longer period than the statute permits without unloading the same in a humane manner into properly equipped pens for water, rest, and feeding for a period of at least five consecutive hours, unless prevented from so doing by storm or other accidents or unavoidable cause which cannot be anticipated by the exercise of due diligence and foresight. In other words, when the agents and servants in charge of the train knowingly confine animals for a period longer than that prescribed by the statute without lawful excuse—that is, when they are not prevented from unloading, to give them rest, by storm or other accident or unavoidable cause, which

could not have bene anticipated or avoided by the exercise of due diligence and foresight—in such a case the railroad may be said to have knowingly and willfully failed to comply with the requirements of the statute in respect to unloading, rest, and feeding of such stock.

When I speak of the time prescribed by the statute, the time prescribed is as to all animals except sheep 28 hours when there is no written request for an extension of that time, and when there is such written request then they may be confined for 36 hours; and in the case of sheep, whether there is a request or not, if the expiration of the 28 hours is in the nighttime, the road may still continue to carry them for 36 hours under the statute. So you are charged that under the law, where the time expires in the nighttime in the case of sheep, the defendant had the right to continue these sheep in transit to a suitable place for unloading, subject to the limitation of 36 hours.

In cases 1,681, 1,682, and 1,687, where the stock was delivered by the defendant to the Santa Fé Railroad Company, or to connecting carriers, you are charged that a delivery by the defendant to the Santa Fé Railroad Company as a connecting carrier of any of the animals in said cases within the limit of time provided by this act was a sufficient delivery to relieve the defendant from further responsibility; that is to say, if the statute had not been violated at the time the delivery was made to the Santa Fé, this company would not be responsible for any subsequent dereliction of duty on the part of the Santa Fé.

You are further charged that a delivery by the defendant to the Western Meat Company, as the owner or consignee of the animals carried by defendant and consigned to that company, within the limit of time provided by the act of June 29, 1906, is a sufficient delivery to relieve the defendant from further responsibility under this act; that is to say, if at that time the time prescribed by the statute had not expired. I charge you that in all of these cases, except 1,681, 1,682, and 1,687, the consignee of the animals carried by the defendant was the Western Meat Company, at South San Francisco, and that the defendant delivered the animals in all of such cases to the Western Meat Company on the tracks of that company at South San Francisco, and that such delivery to the Western Meat Company within the limit of the time required by the act of June 29, 1906, would be sufficient to relieve the defendant from further responsibility under the act.

You are further charged, gentlemen, that the burden of proof in each one of these cases is upon the government, and that it is required to prove the acts constituting the violation of the statute by a preponderance of evidence; that is to say, the government is not required to prove its allegations beyond all reasonable doubt, but simply by a preponderance of evidence, and by a "preponderance of evidence" is meant that evidence which, after a consideration of all the evidence, is in the judgment of the jurors entitled to the greatest weight. Or, stated in this way, the phrase "preponderance of evidence" means that the testimony which points to a certain conclusion appears to the jury to be more credible and probable than the testimony to the contrary. It means such evidence as, when weighed with that which opposes it, has more convincing force, and from which it results that the greater probability is in favor of the party upon whom the burden rests.

As already stated to you, the statute fixes the time during which animals of various kinds, therein mentioned, can be confined in cars during transportation from one state into another at 28 consecutive hours, and further provides that upon the written request of the owner or person in custody of that particular shipment, which written request shall be separate and apart from any printed bill of lading, the time may be extended to 36 hours, and in the case of sheep, where the limitation expires during the nighttime, they may be carried continuously for a period of 36 hours.

You are charged that each independent shipment or consignment of stock is the basis for determining whether a violation of the law has been committed or not, and if you find from the evidence that any particular train of cars was made up of several consignments of stock of various kinds from different consignors to the same or different consignees, and the entire train load of stock thus made up was detained longer than the time prescribed by the statute, or longer than 36 hours upon request of the owners, then it is your duty to find as many violations of the law as there are various shipments making up the aforesaid train.

You are further charged that, in determining the time of confinement of any given shipment of stock, you are to calculate from the completion of the loading at any given point to the commencement of the unloading of the stock at the next point along the route; and you should find as many violations of the law, even though it should be in relation to the same stock, on the same train, as the periods of confinement of the stock between loading and the next unloading may be in excess of the statutory time prescribed for such confinement between the point of original departure and the final destination of that particular shipment.

You are further charged that it is only accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight that can excuse the violation of the law, and if an accident occurs to a train on which stock is being transported, which accident was caused by the negligence of the company so transporting said stock, and as a result of the negligence and accident the stock is confined for a longer period than the statutory time, it will be your duty to find against the transportation company under such circumstances.

You are further charged that mere press of business is no excuse for confining stock for a longer period than the time allowed by the law, and sidetracking to allow passenger trains or fast freight trains the right of way is no excuse or defense for the violation of the law, provided the meeting of such trains could have been anticipated at the time the stock train was dispatched from its loading point. In such a case it is the duty of the defendant to provide such number of sidings and sufficient tracks properly to handle their business and to avoid carrying stock for a period longer than the law prescribes. And it is the further duty of the defendant to provide a sufficient number of suitably equipped corrals or stockyards in which to unload stock which it may undertake to transport, and in which the said stock may have suitable care, food, water, and rest. In other words, the company

must transact its business in view of its known condition, and if the traffic on the road is so congested that any one would reasonably know that it would not be possible to get a train of stock through between two unloading points within the time prescribed by law, why the company is responsible for that. They must exercise reasonable care and foresight, and when they know that there is any cause which would prevent the delivery of the stock they should not accept it.

You are further charged that in the transportation of sheep, if the 28-hour limit expires in the nighttime, the said sheep may be continued in transit to a suitable place for unloading, not to exceed the limitation of 36 hours, whether request is made or not. In other words, owing to the peculiarities of sheep, and the difficulty of handling them in the nighttime, it is permissible to continue them in transportation, even without request, beyond the 28-hour limit, and up to the 36 hours, but not to exceed the limit of 36 hours, even though a request so to exceed the latter limit were made by the owner or shipper. And in this connection I charge you that it is the intention of the statute that under no circumstances are sheep to be confined for a longer period than 36 hours, and, where the limitation of 36 hours will expire in the nighttime, it is the duty of the defendant to unload the shipment of sheep before dark, and for that purpose it is the duty of the defendant to provide such suitable and necessary stockyards along its route as will enable it so to unload any given shipment of sheep in order to save a violation of the statute.

It is for the jury to determine the question of fact as to whether the law has been violated in any given instance, and if you find that such violation has occurred, in such cases as you so find your verdict should be that you find in favor of the United States and against the defendant, and it would then be the duty of the court to determine the amount of the penalty within the limits of the statute.